Citation Nr: 1550119 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 09-29 717 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUE

1. Entitlement to service connection for left knee disability.

2. Entitlement to service connection for right knee disability.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Roya Bahrami, Associate Counsel





INTRODUCTION

The Veteran had active service from June 1995 to September 2000, including service in Bosnia.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan.

In March 2014, the Board remanded the claim for further development. 

This appeal was processed using VBMS (the Veterans Benefits Management System). Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

The Veteran's left knee claim is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran's right knee disability, diagnosed as right knee medial plica, had its onset in service.


CONCLUSION OF LAW

Right knee disability, diagnosed as right knee medial plica, was incurred in service. 38 U.S.C.A. §§ 1110, 1154(a), 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303(a) (2015)




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran asserts that service connection is warranted for right knee disability because the condition has been recurrent since service.

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table). Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical and lay evidence, with due consideration to VA's policy to administer the law under a broad and liberal interpretation consistent with the facts in each individual case. 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d at 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board").

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit (Federal Circuit), citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a) (West 2002). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). 

Service treatment records (STRs) reflect multiple complaints of knee pain. In September 1998, the Veteran complained of anterior knee pain and shooting pain down leg by end of day. There was no prior injury. Physical examination revealed no tenderness to palpation (TTP) of knees. Range of motion (ROM) was within normal limits (WNL). Strength was WNL. Joint stability tests were normal. The Veteran was instructed not to run for 10 days. In December 1998, the Veteran reported his knees had improved 20 to 30 percent. He was gradually increasing his pace on the treadmill. He complained of grinding in right knee especially. Physical examination revealed a negative patellar grind. There was mild crepitus on the right with patellar motion. The Veteran was instructed to continue increasing weight and activity as tolerated.

In January 1999, the Veteran reported that he had been on leave but was able to go to the gym for continued strengthening. He reported that buddy-assisted sit-ups still hurt, and that he was unable to walk after doing a PT test. He felt 35 percent improved overall. He reported an increase in crepitus lately. He stopped taping the knee caps. The examiner assessed RRPS (retropatellar pain syndrome). Treatment included trial of cho-pat strap and the Veteran was instructed to continue with the strengthening program.

In January 2000, the Veteran underwent arthroscopic surgery to determine the etiology of the right knee pain. No abnormalities were found. At his post-op appointment, the Veteran reported that his right knee was still a little sore from the scope. The examiner noted slight swelling and decreased ROM. During January 2000 physical therapy, the Veteran denied locking or giving way or swelling. Examination revealed TTP of the medial right knee. There was decreased patellar mobility. ROM of the right knee was 0 to 95 degrees with pain at 95 degrees. The Veteran had a mildly antalgic gait.

On July 2000 separation examination, the examiner noted that the Veteran started having right knee problems in March 1998. The Veteran still complains of pain especially when running. He had not really tried anything for the pain, just staying off feet. An August 2000 health assessment noted the following "temporary (minor) problems:" right knee pain; right knee scope January 2000.

Post-service, private treatment records dated March 2011 to April 2013 reflect complaints of bilateral knee pain, reported as ongoing since service and getting progressively worse. An April 2011 x-ray of the bilateral knees was normal; however, an MRI of the right knee showed a medial plica.

On April 2014 VA examination, the Veteran reported that he began to have right knee pain while on active duty. He denied any trauma to the knee. He had pain while running. He had arthroscopic surgery which did not show any pathology. He had physical therapy prior to the surgery. Since service, he had ongoing knee pain. He started to receive care for both knees in 2006. He has had joint injections of the knees since service. The diagnosis was right knee medial plica.

Here, the competent and credible lay and medical evidence shows that the Veteran has had right knee problems since service, which are currently diagnosed as right knee medial plica. Nothing withstanding the negative nexus provided by the April 2014 VA examiner, the Board finds that service connection for right knee medial plica is warranted because the disability had its onset in service. As such, service connection for right knee medial plica is warranted. 38 C.F.R. § 3.303(a).


ORDER

Service connection for right knee disability, diagnosed as right knee medial plica, is granted.


REMAND

The Veteran has competently and credibly reported having left knee problems since service. Although the April 2014 VA examiner indicated that the Veteran did not have a left knee disability, the records show he has been diagnosed as having chronic left knee pain and has received treatment, including injections, to treat the disability. See April 2013 private medical record. Further, records of the Veteran's care dated since April 2014 has not been associated with the claims folder. Given the absence of a current diagnosis, the Board finds that a remand is necessary to obtain these records and to afford the Veteran another VA examination.

Accordingly, the case is REMANDED for the following action:

1. Associate with the claims file all outstanding VA treatment records related to the Veteran's left knee since April 2014. Any additional pertinent private treatment records identified by the Veteran should also be obtained, following the receipt of any necessary authorizations from the Veteran. If no records are found, notify the Veteran and her representative. 

2. After associating all pertinent and outstanding records with the claims folder, schedule the Veteran for an appropriate VA examination to identify all left knee disabilities found to be present. The claims folder should be made available to and reviewed by the examiner.

Based on the Veteran's competent and credible report of left knee problems since service and the assessment of chronic left knee pain and treatment for the condition, please opine as to whether any left knee disability found to be present is related to or had its onset in service or was caused or aggravated by his service-connected right knee disability.

3. Then readjudicate the appeal. If the benefit sought remains denied, the Veteran and his representative must be furnished a Supplemental Statement of the Case and be given an opportunity to submit written or other argument in response before the claims file is returned to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs