﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/21 Archive Date: 04/30/21

DOCKET NO. 190208-3217
DATE: April 30, 2021

ORDER

Entitlement to service connection for diabetes mellitus type II is denied.

Entitlement to service connection for renal failure as secondary to diabetes mellitus type II is denied.

FINDINGS OF FACT

1. The competent evidence does not show that the Veteran was exposed to herbicide agents in service, nor is his diabetes shown to be causally or etiologically related to any disease, injury, or incident in service, to include the alleged exposure to herbicides.

2. The Veteran’s kidney disease was not shown to be causally or etiologically related to any disease, injury, or incident in service, to include the alleged exposure to herbicides.

3. The Veteran does not have a service-connected disability that proximately caused his renal failure.

CONCLUSIONS OF LAW

1. The criteria for service connection for diabetes mellitus type II are not met. 38 U.S.C.§§ 1110, 5107; 38 C.F.R. § 3.102, 3.303, 3.304, 3.307, 3.309.

2. The criteria for service connection for renal failure as secondary to diabetes mellitus type II are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.306, 3.307, 3.309, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service from May 1965 to April 1969. The Veteran also had Air Force Reserve service from April 1969 to May 1971 and National Guard service from March 1973 to June 1973.

This matter is on appeal before the Board of Veterans’ Appeals (Board) from a Department of Veterans Affairs (VA) Agency of Original Jurisdiction (AOJ) rating decision dated in January 2019.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with a decision of the VA on their claim to seek review. Here, in December 2016, the AOJ issued its initial rating decision and in July 2018, the Veteran opted into VA’s test program, the Rapid Appeals Modernization Program (RAMP). In January 2019, the AOJ issued a RAMP rating decision, which denied service connection for diabetes mellitus and renal failure, as secondary to diabetes. The Veteran filed a Decision Review Request: Board Appeal (Notice of Disagreement) in February 2019. The Veteran elected to have a Board hearing. In April 2019 correspondence, the Board accepted the Veteran’s appeal and placed it on the Hearing docket. 

The Veteran was afforded a Board hearing in January 2021. A transcript of that hearing is of record. Under the AMA, the Board may only consider the evidence of record at the time of the RAMP opt-in, as well as any evidence submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a). The Board notes that the 90-day window has closed, and no additional evidence was submitted.

1. Entitlement to service connection for diabetes mellitus type II

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110. Service connection can be established by evidence that shows “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service-the so-called “nexus” requirement.” Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Certain specified diseases may be presumptively service connected in certain circumstances. 38 C.F.R. § 3.309. The law provides that diseases associated with exposure to certain herbicide agents used in support of military operations in the Republic of Vietnam (Vietnam) during the Vietnam era will be considered to have been incurred in service. 38 U.S.C. § 1116 (a)(1); 38 C.F.R. § 3.307 (a)(6). In addition, a veteran who during active military service between April 1, 1968, and August 31, 1971, served in a unit that operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, as determined by the Department of Defense (DoD), shall be presumed to have been exposed during such service to a herbicide agent, unless there is affirmative evidence to the contrary. 38 C.F.R. § 3.307 (a)(6)(iv). 

Here, the Veteran has not alleged service in Vietnam or the DMZ. The Veteran’s service personnel records (SPRs), including his DD Form 214, do not indicate service in Vietnam or Korea. Therefore, he is not presumed to have been exposed to herbicides, including Agent Orange, on the basis of any Vietnam or Korean DMZ service. 38 U.S.C. § 1116 (a); 38 C.F.R. §§ 3.307 (a)(6)(iii), (iv); 3.313(a).

However, the presumption of service connection for herbicide-related diseases could apply if exposure to herbicide agents is shown on a factual basis. In essence, if the Veteran did not have qualifying service in the required locations and timeframes, actual exposure to herbicide agents must be verified through the appropriate service department or other sources in order for the presumption of service connection for a herbicide-related diseases under 38 C.F.R. § 3.309 (e) to be applicable. Exposure to herbicide agents is not presumed in such instances, but the exposure to one of the herbicides listed at 38 C.F.R. § 3.307 (a)(6)(i) can still be established if shown by the facts of the case. Once exposure to herbicide agents has been established by the facts of the case, the presumption of service connection found in 38 C.F.R. § 3.309 (e) for herbicide-related diseases is applicable.

Type II diabetes mellitus is listed as a disability associated with herbicide exposure for purposes of the above presumption. 38 U.S.C. § 1116 (a)(2); 38 C.F.R. § 3.309 (e). In this regard, the AOJ made an affirmative finding, and the Veteran’s private medical records confirm, that he has type II diabetes mellitus. Therefore, the central question in this case is whether the evidence establishes on a factual basis that the Veteran was exposed to herbicide agents during service. 

In adjudicating a claim, the Board is charged with the duty to assess the credibility and weight given to evidence. See Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997). Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To deny a claim on its merits, the preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

The Veteran contends he was exposed to herbicides while he was stationed in Puerto Rico, and, therefore, his diabetes should be presumptively service connected. Unfortunately, for the reasons set forth below, the Veteran’s claim cannot succeed as there is insufficient evidence to find herbicide agent exposure.

Initially, the Board notes that the Veteran was not diagnosed with diabetes during active duty service. At an enlistment examination in May 1965, all body systems were normal except for identifying body marks, scars, and tattoos. All systems were normal at a separation examination in April 1969.

The Veteran’s SPRs show that he was in Puerto Rico from approximately May 1967 to September 1968.

In a June 2017 Notice of Disagreement, the Veteran contended that herbicide agents were stored and tested in Mayaguez, Puerto Rico between 1956 and 1968.

In a statement submitted in July 2018, the Veteran explained that while he was stationed at Ramey AFB, he believed that he was exposed to herbicides because he lived in Mayaguez.

In October 2018, the AOJ confirmed that the Veteran was stationed at Ramey AFB from May 2, 1967 to September 30, 1968. The DoD indicated that there were small-scale tests of herbicide agents in Mayaguez between 1963 and 1967. However, there was no evidence that the Veteran, specifically, was exposed.

In the January 2021 Board hearing, the Veteran testified that he did not witness herbicide agents being sprayed or used while in Puerto Rico, and he did not observe any brush that had been cleared. He explained that he did not know what Agent Orange was at the time. The Veteran testified that he worked in supplies and received broken parts from planes that flew in Vietnam, and they “probably” had herbicides on them. The Veteran also explained that he conducted research and contended that he was exposed to contaminated water at Warren AFB in Wyoming, and to herbicide agents as a Reservist in Jacksonville, Florida. The Veteran was informed that he had 90 days to submit any research or evidence he wanted the Board to consider regarding his exposures.

After reviewing the record, the Board concludes that there is insufficient evidence to establish that the Veteran was exposed to herbicide agents on a facts-found basis. While the Veteran was in Mayaguez, Puerto Rico in 1967, and the DoD confirmed that herbicide agents were tested and stored there in that year, the evidence does not show that the Veteran was actually exposed. The testing was reported to have been small-scale, and the Veteran testified that he did not recall seeing herbicide agents being used, nor did he see areas that had been cleared with defoliants. Moreover, the Board finds that the Veteran’s testimony that he “probably” handled parts on planes that had herbicides from Vietnam is too attenuated for a finding that the Veteran was at least as likely as not exposed to herbicide agents as a supply specialist. The Board also concludes that the Veteran is not competent to identify herbicide agents that may have been on a plane that flew in Vietnam, as the evidence shows that he was not aware of such agents at the time.

Even if the Veteran is not entitled to presumptive service connection for type II diabetes based on facts-found herbicide exposure, VA must also consider the claim on a non-presumptive direct evidentiary basis. See Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994); 38 U.S.C. § 1113 (b); 38 C.F.R. § 3.304 (d) (noting the availability of service connection on a presumptive basis does not preclude consideration of service connection on an herbicide-related direct basis). Having said that, prior to the rating decision on appeal, the Veteran has not pointed to any in-service injury or event that may be causally related to his diabetes, other than herbicide exposure. His claims file also contains no positive etiological opinions for any of the claimed disabilities. Therefore, he has also not met the criteria for entitlement to service connection on a direct basis. 38 C.F.R. §§ 3.303, 3.304 (d).

The Board recognizes that at the January 2021 hearing, the Veteran testified about research and raised additional theories of entitlement to service connection. The Veteran’s testimony, alone, is insufficient to grant the claim, and the research was not submitted within the requisite timeframe, nor was there supporting evidence regarding any other theory of entitlement provided. 

Moreover, under the AMA, the Board is not permitted to remand a case to the AOJ for additional development unless the development should have been conducted prior to the rating decision on appeal. See 38 C.F.R. § 20.802 (a) (if there has been a pre-decisional duty to assist error, the claim must be returned for correction of the error and readjudication). In this case, prior to the AOJ’s decision, the Veteran only identified one theory of entitlement to service connection, exposure to herbicide agents in Puerto Rico, and the AOJ developed the claim, making a remand inappropriate. Therefore, if the Veteran wants his claim be considered on the basis of his newly-claimed exposure to contaminated water, or exposure to herbicides at a different location other than Puerto Rico, he may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

While the Board is sympathetic to the Veteran’s claim, on the evidence of record, the claim must be denied. The preponderance of the evidence establishes that the Veteran’s diabetes was not incurred in or aggravated by the Veteran’s active duty service, including exposure to herbicide agents in Puerto Rico. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309; Gilbert v. Derwinski, 1 Vet. App. 49.

2. Entitlement to service connection for renal failure as secondary to diabetes mellitus type II

Notwithstanding the principles of service connection outlined above, service connection may alternatively be established on a secondary basis for a disability which is proximately due to, or the result of, a service-connected disability. 38 C.F.R. § 3.310 (a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists; and (2) that the current disability was either: (a) proximately caused by; or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). In order to prevail under a theory of secondary service connection, there must be: (1) evidence of a current disorder; (2) evidence of a service-connected disability; and, (3) a medical nexus between the service-connected disability and the current disorder. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

The record reflects that the Veteran has a diagnosed kidney disability. Thus, the first prong of Wallin has been met. However, the Veteran’s claim fails on the second prong. The most recent code sheet shows that the Veteran does not have any service-connected disabilities, and the Board has concluded that service connection for diabetes is not warranted on the evidence of record. Therefore, the preponderance of the evidence is against the claim for service connection for renal failure as secondary to diabetes mellitus, and, unfortunately, the claim must be denied.

 

 

D. SMART

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Smith, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.